IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CINDY BYNUM,

        Plaintiff,

v.                                           No. CIV 03-682 JP/RLP

WAL-MART STORES, INC.,
a Delaware corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

On March 11, 2004, Defendant filed a Motion for Summary Judgment (Doc. No. 36).

Having carefully reviewed the briefs, the case law, and the evidence in the record, the Court finds

that Defendant's motion should be granted in part and denied in part.

Plaintiff's employment with Defendant was terminated in June of 2002.  Following her

termination, Plaintiff exhausted her administrative remedies and then filed this lawsuit.  Plaintiff

has asserted claims of gender and age-based discrimination in violation of Title VII, the Age

Discrimination in Employment Act ("ADEA") and the New Mexico Human Rights Act

("NMHRA"), as well as state law claims for breach of contract, defamation, and retaliatory

discharge.  Defendant has moved for summary judgment on all claims.

I.      **FACTUAL BACKGROUND**

The Court will view the facts in the light most favorable to the plaintiff.  See EEOC v.

Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1189 (10th Cir. 2000).  The following are the

facts, established by admissible evidence, that most favor Plaintiff.  Plaintiff, a 51-year old female,

had been employed by Defendant Wal-Mart Stores, Inc. since 1998.  At the time of her

termination, Plaintiff worked as an associate in the Garden Center of Wal-Mart Store #1397 in

Albuquerque, New Mexico.

Wal-Mart Assistant Manager Ely Sanchez states that on or about June 6, 2002, Plaintiff

took a 20 to 25 minute break without first clocking out at the time clock.  Mr. Sanchez claims

that at some point during the late morning on that day, he was paged by several Garden Center

employees, who informed him that Plaintiff was eating lunch in her car parked outside the Garden

Center.  Def. Mem. (Doc. No. 37) Ex. H at 52.  These employees suggested to Mr. Sanchez that

Plaintiff had taken her break without first clocking out.  Id.   Mr. Sanchez identified the three

employees who allegedly paged him as Cecil Gomez, June Hayden, and Suzie Franco.  Id.

However, all three of those employees now deny that they paged Mr. Sanchez on the day in

question to inform him that Plaintiff was eating in her vehicle.[1]  Plf. Mem. (Doc. No. 43) Ex. 3 at

31; Ex. 5 at 27; Ex. 6 at 16.

Mr. Sanchez contends that in response to the information provided by the Garden Center

employees, he went outside into the parking lot and observed Plaintiff eating in her vehicle, which

was parked adjacent to the Garden Center. Def. Mem. (Doc. No. 37) Ex. H at 57.  Mr. Sanchez

states that he then instructed the three employees to page him again when Plaintiff returned to the

Garden Center.  Id.  According to Mr. Sanchez, approximately 20 to 25 minutes later, the three

---

[1]  Mr. Sanchez cannot recall the exact date that this incident took place, and failed to take any notes reflecting details such as the date of the incident or the names of the employees who paged him.  Plf. Mem. (Doc. No. 37) Ex. 4 at 55-57.  By affidavit testimony submitted after his deposition, Mr. Sanchez asserts that he cannot recall the names of the Garden Center employees who informed him that Plaintiff was eating in her vehicle.  Def. Reply (Doc. No. 45) Ex. R at 2.

Garden Center employees again paged him to inform him that Plaintiff had returned to the Garden Center.[2]  Id. Ex. H at 58.  Mr. Sanchez then examined Plaintiff's time card, and verified that she had not clocked out prior to taking her break.  Id.  Furthermore, Mr. Sanchez noted that Plaintiff's time card archive indicated that Plaintiff had not clocked out for meal breaks on a number of prior occasions.  Id.

Wal-Mart corporate policy permits hourly associates such as Plaintiff to take a 15 minute break without clocking out, but requires associates to clock out when taking a "meal break," which is a break that lasts up to 30 minutes.  Id. Ex. A at 105; Ex. B; Plf. Mem. (Doc. No. 43) Ex. 2 at 91.  The policy requires hourly employees to clock out at the start of their meal break, and clock in when returning to work. Def. Mem. (Doc. No. 37) Ex. A at 105.  Plaintiff acknowledges that she was aware of this policy during her employment at Wal-Mart.  Id. at 106. The Wal-Mart Associate Handbook (the "Handbook") states that "no associate should work over a six hour period without taking at least a 30-minute meal period.  Remember to clock in and out for meal periods."  Plf Mem. (Doc. No. 43) Ex. 2 at 87; Def. Mem. (Doc. No. 37) Ex. D.  During the course of her employment with Defendant, Plaintiff had signed a form acknowledging that she had received and read the policies contained in the Handbook.  Id. Ex. F.  This acknowledgment form expressly stated that the Handbook is "in no way to be interpreted as a contract."  Id.

The Handbook further states that "certain actions of misconduct . . . may result in immediate termination."  Def. Mem. (Doc. No. 37) Ex. D.  Among the actions listed in the

_____

[2]  Mr. Sanchez cannot recall exactly how much time passed between when he saw Plaintiff taking a break in her vehicle and when Plaintiff returned to work in the Garden Center.  Plf. Mem. (Doc. No. 43) Ex. 4 at 58, 98. Mr. Sanchez admits that if Plaintiff's break had lasted only 15 minutes, rather than 20 to 25 minutes, Plaintiff would not have been required to clock out prior to taking her break under Wal-Mart corporate policy.  Id. at  58.

Handbook that may result in immediate termination is "theft of company time." Id. Wal-Mart corporate policy provides for "progressive discipline," known as "Coaching for Improvement," when an associate's "behavior (job performance or misconduct) fails to meet the Company's expectations . . . ." Id. Ex. A at 106; Ex. G. However, the policy provides that "associates who are deemed to have engaged in Gross Misconduct are subject to immediate termination" without the benefit of the Coaching for Improvement policy. Id. Ex. G. "Theft of company time" is one of the actions listed in the policy as constituting "Gross Misconduct." Id.

Based on his belief that Plaintiff had taken a break lasting 20 to 25 minutes, Mr. Sanchez determined that Plaintiff had taken a "meal break" rather than a 15 minute break. Id. Ex. H at 58. Because Plaintiff had not clocked out prior to taking this meal break, as is required by Wal-Mart corporate policy, Mr. Sanchez concluded that Plaintiff had committed the offense of theft of company time. Id. at 61. Furthermore, from his observation of Plaintiff's time card archive that revealed that she had not clocked out for meal breaks on a number of prior occasions, Mr. Sanchez "recognized that we had an issue," and concluded that Plaintiff probably had committed theft of company time on numerous occasions in the past as well. Id. at 59, 61.

After concluding that Plaintiff had committed theft of company time, Mr. Sanchez met with his co-manager, Lance Yarmer, and informed him that Plaintiff had committed an infraction that was punishable by immediate termination. Def. Mem. (Doc. No. 37) Ex. H at 61. Because Mr. Sanchez believed that Plaintiff had committed theft of company time on numerous prior occasions, he did not believe that the more lenient "progressive discipline," known as "Coaching for Improvement" was an appropriate form of discipline for Plaintiff's conduct. Id. at 59, 61. Accordingly, Mr. Sanchez informed Mr. Yarmer that he intended to terminate Plaintiff's

4

employment.  Id.  Mr. Sanchez asserts that Mr. Yarmer fully supported the decision to terminate Plaintiff.  Id.

Plaintiff was terminated on June 6, 2002.  An Exit Interview Form documenting Plaintiff's termination indicates that Plaintiff was terminated involuntarily for theft of company time based on "not taking/clocking out for lunches."  Id. Ex. M; Plf. Mem. (Doc. No. 43) Ex. 4 at 82. Plaintiff refused to sign the Exit Interview Form on the grounds that she disagreed with the reasons for her termination.  Plf. Mem. (Doc. No. 43) Ex. 4 at 82.  According to documents provided by Travis Gutierrez, Personnel Manager for Wal-Mart Store #1397, six other employees were terminated for theft of company time in 2002, five of whom were male.  Def. Mem. (Doc. No. 37) Ex. N.

Plaintiff contends that on the date in question, she was taking a 15 minute break rather than a meal break, and therefore was not required to clock out prior to taking the break.  Plf Mem. (Doc. No. 43) Ex. 2 at 89.  Plaintiff asserts that she would always clock out prior to taking a meal break.  Id. at 149.   Furthermore, Plaintiff claims that she had not failed to clock out for meal breaks on prior occasions.  Rather, Plaintiff contends that she often would decline to take a meal break during her work day, which is why her time card archive reflected that she had not clocked out for meal breaks on a number of prior occasions.  Id. at 95.  Mr. Sanchez acknowledges that Plaintiff's time card archive simply may indicate that Plaintiff did not take a meal break at all on certain days.  Id. Ex. 4 at 87.  Mr. Sanchez also states that an employee's failure to take a meal break during the course of a work day is not a terminable offense under Wal-Mart corporate policy.  Id. at 96.  Mr. Sanchez admits that he has no actual knowledge, apart from his observation of the time card archive, that Plaintiff failed to clock out before taking a meal

break on any prior occasion.  Id. at 83, 87-96.

Plaintiff asserts that other Garden Center employees, particularly male employees, often would eat meals in their vehicles without first clocking out.  Plf. Mem. (Doc. No. 43) Ex. 2 at 97-98, 138, 153; Ex. 8 ¶¶ 14-16; Ex. 9 ¶¶ 14-16.  In addition, Plaintiff contends that male employees would eat doughnuts on the sales floor of the Garden Center without first clocking out.  Id. at 130.  Mr. Sanchez acknowledges that he was aware that Garden Center employees would eat doughnuts on the sales floor without first clocking out.  Id. Ex. 4 at 117.  Plaintiff further asserts that male Garden Center employees would often decline to take a meal break during the course of the work day.  Id. Ex. 2 at 95-96, 153.

In addition, Plaintiff asserts that approximately five weeks prior to her termination, she notified her supervisor in the Garden Center, Karen Jim, as well as Risk Control Leader Glenda Nelson, that she had injured her left shoulder as a result of on-the-job activity.  Plf. Mem. (Doc. No. 43) Ex. 1; Ex. 2 at 116-21.  Plaintiff asserts that, after informing Ms. Jim about her shoulder pain, Ms. Jim replied that if Plaintiff valued her job, she would "keep [her] mouth shut."  Id. Ex. 2 at 119.  Plaintiff claims that she saw a physician about her injury, but admits that she did not submit any paperwork or file a report with Wal-Mart regarding her doctor's visit.  Id. at 120.  In 2000, while working as an associate in the deli department of Wal-Mart Store #1397, Plaintiff had suffered an injury to her right shoulder that required surgery and caused her to miss several weeks of work.  Id. at 40-42.  After recovering from her surgery, Plaintiff was reassigned to work first as a people greeter, and then as an associate in the Garden Center to accommodate her injury.  Id. at 43-45.  Plaintiff had worked as an associate in the Garden Center since 2000.  Id. at 44.

Both Ms. Jim and Ms. Nelson deny that they ever had a conversation with Plaintiff about

Plaintiff's injury to her left shoulder. Def. Mem. (Doc. No. 37) Ex. J at 1; Def. Reply Mem. (Doc. No. 45) Ex. S at 31-33. In addition, Mr. Sanchez asserts that he was unaware that Plaintiff had reported any injury at the time that he decided to terminate Plaintiff. Def. Reply Mem. (Doc. No. 45) Ex. R at 3-4. Plaintiff states that she did not inform Mr. Sanchez about her injured left shoulder prior to her termination. Plf. Mem. (Doc. No. 43) Ex. 2 at 117. Furthermore, Mr. Sanchez says that prior to the incident in question, he did not have any problems with Plaintiff's job performance. Plf. Mem. (Doc. No. 43) Ex. 4 at 52. Following Plaintiff's termination, nobody was hired to replace her in the Garden Center. Rather, Plaintiff's duties and responsibilities were assumed by the remaining Garden Center associates. Def. Mem. (Doc. No. 37) Ex. N.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings.

Bacchus, 939 F.2d at 891.  To withstand a motion for summary judgment, the non-movant must

make specific reference to admissible evidence in the record.  See Gross v. Burggraf Constr. Co.,

53 F.3d 1531, 1546 (10th Cir. 1995).  Unsubstantiated allegations, no matter how true they might

be, cannot be considered.  See Id.

## III.   DISCUSSION

### A.   Gender Discrimination Claims

Plaintiff asserts that Defendant terminated her employment because of her sex in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the NMHRA, N.M.

STAT. ANN. § 28-1-7(A). Am. Compl. (Doc. No. 1) at ¶¶ 22, 25.  A plaintiff alleging a gender-

based employment discrimination claim under either Title VII or the NMHRA must present direct

or indirect evidence sufficient to show intentional discrimination.  See Kendrick v. Penske Transp.

Serv., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000); Sonntag v. Shaw, 2001-NMSC-015 ¶ 11, 130

N.M. 238, 243 (N.M. 2001).  Here, Plaintiff offers no direct evidence of discrimination.  The

Court therefore must determine if there is sufficient indirect evidence of gender discrimination for

Plaintiff's claims to survive summary judgment.

In analyzing circumstantial evidence of discrimination under either Title VII or the

NMHRA, courts apply the burden-shifting approach set forth by the Supreme Court in

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  See Kendrick, 220 F.3d at

1225; Sonntag, 2001-NMSC-015 ¶ 27, 130 N.M. at 246-47.  Under this framework, a plaintiff

must first establish a prima facie case of discrimination.  Kendrick, 220 F.3d at 1226; Sonntag,

2001-NMSC-015 ¶ 27, 130 N.M. at 247.  If the plaintiff establishes a prima facie case, then the

burden shifts to the defendant to demonstrate a "legitimate, non-discriminatory reason" for its

action.  Kendrick, 220 F.3d at 1226; Sonntag, 2001-NMSC-015 ¶ 15, 130 N.M. at 247.  If the

defendant offers a legitimate non-discriminatory reason, the burden shifts back to the plaintiff to

show that the defendant's reason is mere pretext or unworthy of belief.  Kendrick, 220 F.3d at

1226; Sonntag, 2001-NMSC-015 ¶ 15, 130 N.M. at 247.

      i.     Prima Facie Case

In order to make out a prima facie case of gender discrimination, Plaintiff must show that:

1) she belongs to a protected class; 2) she was adversely affected by the employment decision; 3)

she was qualified for the position; and 4) she was treated less favorably than her similarly situated

male counterparts.  See Tomsic v. State Farm Mut. Auto Ins. Co., 85 F.3d 1472, 1476 (10th Cir.

1996); Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1380 (10th Cir. 1994).  Here, Plaintiff

has satisfied the first three steps of the prima facie case, because Plaintiff is a woman, she was

adversely affected by the decision to terminate her employment, and she was qualified for the

position of Garden Center associate by virtue of her having held the position for a significant

length of time.  See English v. Colorado Dep't of Corr., 248 F.3d 1002, 1008 (10th Cir. 2001)

(finding that extensive period of time that plaintiff held position supported inference that he was

qualified for the position).

With respect to the fourth step of the prima facie case, Plaintiff argues that she has met her

burden by presenting evidence that she was terminated "for eating on company time when male

associates in the garden center did the same thing and were not disciplined."  Plf. Mem. (Doc. No.

43) at 9.  Specifically, Plaintiff has presented evidence that: male employees would eat in their

vehicles and on the sales floor without first clocking out; Wal-Mart management was aware of

this behavior; and these male employees were not disciplined for this behavior.  Id. Ex. 2 at 97-98,

138, 153; Ex. 8 ¶¶ 14-16; Ex. 9 ¶¶ 14-16.  However, Defendant argues that Plaintiff has not satisfied the fourth step of the prima facie case, because Plaintiff has failed to show evidence that she was treated less favorably than "similarly situated" male counterparts.  Defendant argues that the male Garden Center employees were not "similarly situated" with Plaintiff, for purposes of the prima facie case analysis, because there is no evidence that they were observed by Wal-Mart management taking 20 to 25 minute breaks without first clocking out.  In other words, Defendant asserts that in order for Plaintiff to show that she was "similarly situated" with the male Garden Center employees, there must be evidence that the male employees engaged in exactly the same conduct that purportedly constituted the reason that Defendant terminated Plaintiff's employment.

While there is no evidence in the record that male Garden Center employees engaged in exactly the same kind of conduct as Plaintiff, this does not mean that these male employees were not "similarly situated" for purposes of the prima facie case analysis.  In a recent Title VII case involving similar facts, the Tenth Circuit reversed a district court's determination that the plaintiff had failed to show that employees who were treated more favorably than the plaintiff were "similarly situated."  See Ortiz v. Norton, 254 F.3d 889, 894 (10th Cir. 2001).  In Ortiz, the district court had narrowly defined the term "similarly situated employee" to mean an employee who met the exact criteria that the defendant had articulated as grounds for terminating the plaintiff.  Id.  Noting that "it should now be obvious that the burden imposed on a plaintiff at the prima facie stage is not onerous," the Tenth Circuit held that the district court's definition of a "similarly situated" employee "made the playing field unlevel for the plaintiff," because under such a narrow definition, "there were no employees against whom comparison could be made."  Ortiz, 254 F.3d 889, 895 (10th Cir. 2001) (internal quotations omitted).

Under the holding in Ortiz, Defendant's characterization of a "similarly situated" employee is too narrow for the Court to adopt.  If the Court were to accept Defendant's argument that a male employee is "similarly situated" with Plaintiff only if the employee was observed by Wal-Mart management taking a 20 to 25 minute break without first clocking out, Plaintiff's burden would be far more onerous than what is required at the prima facie stage, because there would likely be no employees against whom comparison could be made.  See id.  Furthermore, since Plaintiff has presented evidence disputing the fact that the break in question lasted as long as 20 to 25 minutes, the Court should not short-circuit Plaintiff's case at the prima facie stage, thereby denying Plaintiff the opportunity to show that the proffered reasons for her termination were pretextual.  See id. at 894 (citing MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115, 1119 (10th Cir. 1991)).

Plaintiff has presented evidence that male Garden Center employees performed similar job functions and engaged in substantially similar conduct, namely, taking breaks in their vehicles and on the sales floor without first clocking out.  Plaintiff has presented evidence that she was treated less favorably than these male employees, in that they were not terminated as a result of this conduct.  Accordingly, the Court finds that Plaintiff has satisfied the fourth element of the prima facie case.

ii.      Legitimate, Non-discriminatory Reason

Since Plaintiff has established a prima facie case, the burden shifts to Defendant to articulate a facially non-discriminatory reason for terminating Plaintiff.  See English, 248 F.3d at 1009; Sonntag, 2001-NMSC-015 ¶ 27, 130 N.M. 247.  To meet this burden, Defendant must clearly set forth, through the introduction of admissible evidence, a legitimate, non-discriminatory

11

reason for discharging Plaintiff.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981); EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992); Sonntag, 2001-NMSC-015 ¶ 27, 130 N.M. 247.

Here, Defendant has presented evidence that Wal-Mart Assistant Manager Ely Sanchez observed Plaintiff taking a 20 to 25 minute break without first clocking out, and that Mr. Sanchez determined that Plaintiff's action constituted theft of company time, which is a terminable offense under Wal-Mart corporate policy.  Def. Mem. (Doc. No. 37) Ex. H at 58-61.  Furthermore, Defendant has presented evidence that Plaintiff had consistently failed to clock out for meal periods, leading Mr. Sanchez to conclude that Plaintiff had committed theft of company time on a number of prior occasions.  Id. at 55, 57-59.  In addition, Defendant has presented documentary evidence from Plaintiff's Exit Interview indicating that the reason for Plaintiff's involuntarily termination was theft of company time based on "not taking/clocking out for lunches."  Id. Ex. M; Plf. Mem. (Doc. No. 43) Ex. 4 at 82.  Accordingly, Defendant has met its burden of providing a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

iii.   Pretext

Since Defendant has articulated a legitimate, non-discriminatory reason for discharging Plaintiff, the burden of persuasion shifts back to Plaintiff to show that Defendant's claimed reason for terminating her was not the true reason, but was merely a pretext for discrimination.  See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000); Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002); Sonntag, 2001-NMSC-015 ¶¶ 27, 31.  As the Supreme Court recently has stated, in cases where a plaintiff has presented indirect evidence of discrimination, it is permissible for a trier of fact to infer the ultimate fact of discrimination from

12

the falsity of the employer's explanation for the adverse employment decision.  See Reeves, 530 U.S. at 147.  Thus, a plaintiff may withstand summary judgment by presenting evidence sufficient to raise a genuine issue of material fact regarding whether the defendant's articulated reason for the adverse employment action is false.  See Wells v. Colorado Dep't of Transp., 325 F.3d 1205, 1218-19 (10th Cir. 2003)

The Tenth Circuit has held that a plaintiff may show pretext by revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason."  Garrett, 305 F.3d at 1217 (citing Reeves, 530 U.S. at 147-49).  Accordingly, the Tenth Circuit has recognized on numerous occasions that a plaintiff can defeat summary judgment by presenting evidence that shows contradictions, inconsistencies, or weaknesses in an employer's proffered legitimate, non-discriminatory reason.  See, e.g., Wells, 325 F.3d at 1218-19 (evidence contradicted employer's version of events that precipitated plaintiff's termination); Garrett, 305 F.3d at 1219 (evidence revealed inconsistencies and contradictions in employer's negative evaluations of plaintiff's job performance); Cole, 43 F.3d at 1380-81 (evidence contradicted negative evaluations of plaintiff's job performance).

Here, Plaintiff has presented evidence that she did not commit theft of company time on the date in question, as alleged by Mr. Sanchez.  Mr. Sanchez specifically identified three Garden Center employees, Cecil Gomez, June Hayden, and Suzie Franco, as the individuals who paged him on the date in question to notify him that Plaintiff was taking a break in her vehicle.  Def. Mem. (Doc. No. 37) Ex. H at 52.  Yet, Plaintiff has presented evidence that all three individuals

13

now deny having paged Mr. Sanchez.  Plf Mem. (Doc. No. 43) Ex. 3 at 31; Ex. 5 at 27; Ex. 6 at

16.[3]  Plaintiff has also presented evidence that Mr. Sanchez cannot recall exactly how much time

elapsed between the moment that he observed Plaintiff eating in her vehicle and the time that she

returned to work in the Garden Center.  Id. Ex. 4 at 98.  Mr. Sanchez believes that the duration of

Plaintiff's break was approximately 20 to 25 minutes, but he admits that he did not make any

notes nor keep any records indicating how long Plaintiff's break actually lasted.  Id. at 55, 57-58.

Plaintiff has testified that on the date in question, she was taking only a 15 minute break in her

vehicle.  Id. Ex 2 at 89.  Moreover, Mr. Sanchez acknowledges that if Plaintiff's break had lasted

only 15 minutes rather than 20 to 25 minutes, Plaintiff would not have been required to clock out

prior to taking her break, and therefore would not have committed theft of company time.  Id. Ex.

4 at 58.  This evidence reveals weaknesses and implausibilities in Defendant's proffered

explanation that Plaintiff committed theft of company time on the date in question.

     Next, Plaintiff has presented evidence that she did not commit theft of company time on

occasions prior to the incident in question.  Mr. Sanchez asserts that, based on a review of

Plaintiff's time card archive, which revealed that Plaintiff had not clocked out for meal breaks in

---

     [3] Mr. Sanchez later asserted by affidavit testimony that he cannot recall the names of the Garden Center
employees who informed him that Plaintiff was taking a break in her vehicle.  Def. Reply (Doc. No. 44) Ex. R ¶
14.  However, the Court will disregard Mr. Sanchez's affidavit testimony on the grounds that it constitutes an
attempt to create a "sham fact issue."  See Burns v. Board of County Commissioners of Jackson County, 330 F.3d
1275, 1282 (10th Cir. 2003).  Factors to be considered in determining whether an affidavit creates a sham issue
include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the
pertinent evidence at the time of the earlier testimony, or whether the affidavit was based on newly discovered
evidence.  Id.
     Here, Mr. Sanchez was cross-examined at his deposition, he had access to the pertinent evidence at the
time of his deposition, and his affidavit statements are not based on newly-discovered evidence.  Rather, the
statements in Mr. Sanchez's affidavit appear to be intended to subvert a potential issue of material fact by
eliminating an inconsistency between Mr. Sanchez's testimony and the evidence that the three Garden Center
employees whom he identified now deny having paged Mr. Sanchez on the date in question.  Accordingly, the
Court will disregard Mr. Sanchez's affidavit statement.

the past, he concluded that Plaintiff had committed theft of company time on numerous prior occasions. Id. at 59, 61. Mr. Sanchez stated that because he believed that Plaintiff had committed theft of company time on numerous prior occasions, he "recognized that we had an issue," and accordingly concluded that termination was appropriate. Id. However, Mr. Sanchez acknowledged that he had no actual personal knowledge, apart from his observation of Plaintiff's time card archive, that she had ever committed theft of company time on prior occasions. Id. at 83, 87-96. Plaintiff asserts that she always clocked out prior to taking a meal break, and that she often would decline to take a meal break during her work day, which would explain why her time card archive reflected that she had not clocked out for meal breaks on numerous occasions. Id. Ex. 2 at 95, 149. Mr. Sanchez acknowledges that Plaintiff's time card archive may simply show that Plaintiff did not take a meal break on certain days. Id. Ex 4 at 87. This evidence reveals inconsistencies and implausibilities in Defendant's proffered explanation that Plaintiff had committed theft of company time on numerous occasions prior to the incident in question.

The Court finds that Plaintiff's evidence that contradicts Defendant's version of events regarding Plaintiff's alleged theft of company time raises a genuine issue of material fact regarding the veracity of Defendant's proffered reasons for terminating Plaintiff. See Wells, 325 F.3d at 1218-19. Accordingly, Plaintiff has satisfied her burden to show that Defendant's legitimate, non-discriminatory reason was pretextual. Therefore, the Court finds that Plaintiff's claims of gender discrimination should survive Defendant's motion for summary judgment.

B.    Age Discrimination Claims

Plaintiff asserts that Defendant also terminated her employment because of her age in violation of the ADEA, 29 U.S.C. §§ 621-634, and the NMHRA, N.M. STAT. ANN. § 28-1-7(A).

15

Am. Compl. (Doc. No. 1) at ¶ 58.  A plaintiff alleging indirect evidence of age discrimination

under the ADEA or NMHRA must adhere to the <u>McDonnell Douglas</u> burden-shifting approach.

<u>See</u> <u>Branson v. Price River Coal Co.</u>, 853 F.2d 768, 770 (10th Cir. 1988); <u>Cates v. Regents of the</u>

<u>New Mexico Institute of Mining & Technology</u>, 124 N.M. 633, 638 (N.M. 1998).

      <u>i.</u>      Prima Facie Case

      In order to make out a prima facie case of age discrimination when the terminated plaintiff

employee has not been replaced, the plaintiff must show that: 1) she was within the protected age

group; 2) she was adversely affected by Defendant's employment decision; 3) she was qualified

for the position at issue; and 4) she was treated less favorably than employees outside the

protected age group.  <u>See</u> <u>Branson</u>, 853 F.2d at 771.

      Here, Plaintiff has met the first three steps of the prima facie case, because she is 51 years

old, she was adversely affected by the decision to terminate her employment, and she was

qualified for the position of Garden Center associate.  However, with respect to the fourth step,

Plaintiff has failed to present any admissible evidence that she was treated less favorably than

younger employees outside the protected age group.  Although Plaintiff asserts in her brief that

younger employees in the Garden Center took breaks and ate on the sales floor without first

clocking out, Plaintiff cites no admissible evidence in the record to support this assertion.  Plf.

Mem. (Doc. No. 43) at 11.  Instead, Plaintiff merely cites to an affidavit attached to Defendant's

brief that lists the dates of birth of all of the Garden Center associates at Wal-Mart Store #1397.

Plaintiff has not made reference to any deposition testimony, affidavit, or other competent

evidence in support of her assertion that younger employees were treated more favorably than

Plaintiff.  Accordingly, Plaintiff has failed to make out a prima facie case of age discrimination

16

under either the ADEA or NMHRA.  See Gross, 53 F.3d at 1546 (unsubstantiated allegations, no

matter how true they might be, cannot be considered).  Thus, Defendant's motion for summary

judgment should be granted as to Plaintiff's age discrimination claims.

       C.      Breach of Contract

       Plaintiff asserts that her termination constituted breach of an implied contract, namely, the

Wal-Mart Associate Handbook.  Am. Compl. (Doc. No. 1) at ¶¶ 29-32.  Specifically, Plaintiff

argues that: 1) because the Handbook governed employment policies and procedures, it should be

considered an implied contract under New Mexico law; and 2) under the terms of the Handbook,

Plaintiff was entitled to the benefit of the "Coaching for Improvement" policy, and therefore that

she should have been "coached" rather than terminated.  Plf. Mem. (Doc. No. 43) at 12.

Defendant responds by pointing out that the Handbook contains an express disclaimer stating that

it is "in no way to be interpreted as a contract."  Def. Mem. (Doc. No.37) Ex. F.  Defendant

points out that during the course of her employment, Plaintiff signed an acknowledgment that the

Handbook was not to be considered a contract.  Id.  Moreover, Defendant argues that even if the

Handbook were to be construed as a contract, Defendant did not breach the terms of the

Handbook because theft of company time is an offense punishable by immediate termination.  Id.

at 7.  As support for this argument, Defendant cites to the "Coaching for Improvement" provision

in the handbook, which states that "certain actions of misconduct . . . may result in immediate

termination," and that "Gross Misconduct" violations, including theft of company time, will result

in termination without the benefit of the Coaching for Improvement process.  Id. Ex. G.

       Under New Mexico law, even if an employment handbook contains a disclaimer stating

that it is not to be considered a contract, a jury nonetheless may find that the handbook created an

implied employment contract.  <u>See</u> <u>McGinnis v. Honeywell, Inc.</u>, 110 N.M. 1, 5-6 (N.M. 1990).

As the New Mexico Supreme Court has stated, "a contractual disclaimer does not automatically

negate a document's contractual status . . . ."  <u>Id.</u> at 6 (<u>citing</u> <u>Zaccardi v. Zale Corp.</u>, 856 F.2d

1473, 1476-77 (10th Cir. 1988)).  In <u>McGinnis</u>, the New Mexico Supreme Court stated that a

jury may determine that an employee handbook constitutes an implied contract if the jury finds the

handbook to be "an agreement in which the parties by a course of conduct [and custom and

usage] have shown an intention to be bound . . . ."  <u>Id.</u> at 4-5.  Thus, under the holding in

<u>McGinnis</u>, the issue of whether an employee handbook constitutes an implied contract is a

question of fact for the jury to decide.  <u>See</u> <u>id.</u>; <u>Mealand v. Eastern New Mexico Medical Center</u>,

2001-NMSC-089 ¶¶ 9-11, 131 N.M. 65, 69-70 (N.M. Ct. App. 2001).  Accordingly, the Court

finds that there is a genuine issue of material fact regarding whether the Handbook constituted an

implied contract between Plaintiff and Defendant.

Turning to Defendant's second argument, that Plaintiff was not entitled to the benefit of

the Coaching for Improvement policy because of her alleged Gross Misconduct, the Court again

finds that Plaintiff has presented evidence that raises an issue of material fact.  As discussed above

in the analysis of Plaintiff's gender discrimination claim, Plaintiff has presented evidence that

raises a factual dispute regarding whether she actually committed the Gross Misconduct violation

of theft of company time at any point during the course of her employment.  If a jury finds that

Plaintiff did not in fact commit theft of company time, then the jury may conclude that Defendant

breached its contractual obligation by terminating Plaintiff rather than "coaching" Plaintiff for any

alleged misconduct associated with the incident in question.  Accordingly, the Court finds that

Plaintiff's breach of contract claim should survive summary judgment.

D.      Defamation

Plaintiff next asserts that Defendant made defamatory statements that Plaintiff committed "gross misconduct," "theft of company time," "not taking/clocking out for lunches," and "leaving work early."  Am. Compl. (Doc. No. 1) at ¶¶ 37-45; Plf. Mem. (Doc. No. 43) at 14.  In support of this claim, Plaintiff cites evidence in the record that at least one Wal-Mart employee testified that he "either heard directly or through the grapevine that Defendant had fired Ms. Bynum for gross misconduct, or, at least, for a violation of Defendant's clock policies."  Plf. Mem. (Doc. No. 43) at 14; Ex. 3 at 31-32.  Defendant responds that Plaintiff has failed to produce evidence that Defendant ever published any defamatory communication or statement about Plaintiff.  Defendant further asserts that Plaintiff has failed to present evidence that the person who received the alleged communication or statement understood it to be defamatory.  Def. Mem. (Doc. No. 37) at 8.

Under New Mexico law, in order to prove a claim for defamation, a plaintiff must present evidence to satisfy the following nine elements: 1) that the defendant published a communication to a third person; 2) the communication contained a statement of fact; 3) the communication concerned the plaintiff; 4) the statement of fact was false; 5) the communication was defamatory; 6) the persons receiving the communication understood it to be defamatory; 7) the defendant knew that the communication was false or negligently failed to recognize that it was false; 8) the communication proximately caused actual injury to plaintiff's reputation; and 9) the defendant abused its privilege to publish the communication.  See Fikes v. Furst, 2003-NMSC-033 ¶ 12, 134 N.M. 602; Newberry v. Allied Stores, Inc., 108 N.M. 424, 429 (N.M. 1989).

Here, Plaintiff has failed to present admissible evidence to support her claim for defamation.  First, Plaintiff has not cited any admissible evidence in the record that Defendant

made any communication or statement about Plaintiff to a third person.  The evidence cited by

Plaintiff that an employee claims to have heard "directly or through the grapevine" about details

of Plaintiff's termination is insufficient to create a material issue of fact regarding whether

Defendant made a defamatory communication or statement to a third person.  See Burns, 330

F.3d at 1281 ("The mere existence of a scintilla of evidence in support of the nonmovant's

position is insufficient to create a dispute of fact that is genuine. . .").   Moreover, Plaintiff has not

presented any admissible evidence that the person(s) who received this alleged communication or

statement understood it to be defamatory, or that such a communication or statement proximately

caused actual injury to Plaintiff's reputation.  Accordingly, the Court finds that summary

judgment should be granted for Defendant with respect to Plaintiff's defamation claim.

  E.  Retaliatory Discharge

  Plaintiff also asserts a claim for retaliatory discharge under New Mexico law, alleging that

she was terminated in retaliation to a possible worker's compensation claim.  Am. Compl. (Doc.

No. 1) at  ¶¶ 51-55.  In support of this claim, Plaintiff contends that approximately five weeks

prior to her termination, she reported a work injury to Garden Center Supervisor Karen Jim and

Risk Control Leader Glenda Nelson.  Plf. Mem. (Doc. No. 43) Ex. 2 at 116-21.  Plaintiff also

points out that she had suffered a similar injury in the past that caused her to miss several weeks

of work.  Id. at 40-42.  Defendant responds by arguing that Plaintiff never filed an actual workers

compensation claim, or any other paperwork regarding her injury, prior to her termination.  Id. at

119-20.  Moreover, Defendant contends that neither Ms. Jim nor Ms. Nelson were involved in the

decision to terminate Plaintiff.  Def Reply Mem. (Doc. No. 45) Ex. R at 3.  Defendant asserts that

Assistant Manager Ely Sanchez, who was the decision-maker responsible for terminating

Plaintiff's employment, was completely unaware that she had reported a possible work injury to Ms. Jim and Ms. Nelson at the time that he terminated Plaintiff.  Id. at 3-4.  Plaintiff admits that she did not inform Mr. Sanchez of her injury prior to her termination.  Plf. Mem. (Doc. No. 43) Ex. 2 at 117.  Furthermore, Defendant points out that Plaintiff has not presented any evidence that Mr. Sanchez knew about Plaintiff's injury, or suspected that she was preparing to file a worker's compensation claim, at the time that he terminated her employment.

Under New Mexico law, a plaintiff who alleges that she has been wrongfully discharged in retaliation for seeking worker's compensation benefits may assert a claim for retaliatory discharge.  See Michaels v. Anglo American Auto Auctions, Inc., 117 N.M. 91 (N.M. 1994).  In order to prevail on such a claim, the plaintiff must show evidence that she had filed, or was about to file, a claim for worker's compensation, and that the defendant employer terminated plaintiff in retaliation for seeking worker's compensation benefits.  See Rhein v. ADT Automotive, Inc., 122 N.M. 646, 653-54 (N.M. 1996).  In Rhein, the New Mexico Supreme Court held that evidence that the plaintiff had been suffering from continued health problems, that the plaintiff had seen a physician about such health problems, and that the plaintiff had informed his supervisor about his health problems was sufficient for the jury to infer that the plaintiff's employer knew that the plaintiff was preparing to file a worker's compensation claim, and that the employer chose to terminate the plaintiff in retaliation for seeking worker's compensation benefits.  See Rhein, 122 N.M. at 653.

Here, viewing the evidence in the light most favorable to Plaintiff, there is evidence that Plaintiff suffered a work-related injury, that she saw a physician about this injury, and that she reported this injury to her supervisor, Karen Jim.  Plf. Mem. (Doc. No. 43) Ex. 2 at 116-21.

Plaintiff has also presented evidence that, after informing Ms. Jim of her injury, Ms. Jim told Plaintiff that her job would be in jeopardy unless she "kept [her] mouth shut."  Id. Ex 2 at 119. While it is true that there has been no evidence presented that Ms. Jim was involved in the decision to terminate Plaintiff, or that either Ms. Jim or Ms. Nelson informed Mr. Sanchez about Plaintiff's injury, Plaintiff is not required to present such evidence in order for her retaliatory discharge claim to survive summary judgment.  See Rhein, 122 N.M. at 653.  In Rhein, the Court notes that the plaintiff informed his supervisor that he was suffering from a work-related injury. Id.  The Rhein opinion does not specify whether this supervisor was ultimately responsible for making the decision to terminate the plaintiff, or whether this supervisor may have informed someone else within the defendant employer's organization about the plaintiff's injury.  However, the Court in Rhein held that evidence that the plaintiff had reported his injury to a supervisor was sufficient evidence from which the jury could infer that the defendant employer was aware of the plaintiff's injury.  Id.  Applying the holding in Rhein, Plaintiff has presented sufficient evidence for a jury to infer that Defendant terminated Plaintiff in anticipation that she was preparing to file a worker's compensation claim.  See Rhein, 122 N.M. at 653.  Therefore, the Court finds that Plaintiff's claim for retaliatory discharge should survive summary judgment.

THEREFORE, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. No. 36) is GRANTED as to Plaintiff's claims for age discrimination and defamation, and DENIED as to Plaintiff's claims for gender discrimination, breach of contract, and retaliatory discharge.

_____
SENIOR UNITED STATES DISTRICT JUDGE